## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

CHARLENE CARROLL,

       Plaintiff,

vs.                                  No. 1:16-cv-1139 KG/KBM

BOARD OF COUNTY COMMISSIONERS
OF RIO ARRIBA COUNTY, RANDY R.
SANCHES, BRANDON ARCHULETA
AND THOMAS R. RODELLA,

       Defendants.

### MOTION OF DEFENDANTS BOARD OF COUNTY COMMISSIONERS OF RIO ARRIBA COUNTY AND THOMAS R. RODELLA FOR JUDGMENT ON THE PLEADINGS AS TO COUNTS III AND IV

COME NOW Defendants Board of County Commissioners of Rio Arriba County ("County") and Thomas R. Rodella ("former Sheriff Rodella"), by and through their counsel of record, Yenson, Allen & Wosick, P.C. (Robert W. Becker, appearing), and move this Court pursuant to Federal Rule of Civil Procedure 12(c) for judgment on the pleadings as to Counts III and IV of the Plaintiff's ("Ms. Carroll's") Complaint. Ms. Carroll's counsel has been contacted as to a position on the motion and has not gotten back to counsel with a position. It is assumed this motion is opposed by Ms. Carroll due to its dispositive nature. Defendants Randy Sanches ("Lieutenant Sanches, now Captain Sanches") and Brandon Archuleta ("former Deputy Archuleta") concur in this motion.

As grounds for the motion, the County and former Sheriff Rodella state the following.

## I.  <u>BACKGROUND</u>

This lawsuit arises out of a search of Ms. Carroll's property in Abiquiu, New Mexico due
to the report of a neighbor that there was a burglary in progress.  Then Lieutenant Sanches, now
Captain Sanches, and former Deputies Archuleta, Chavez and War were dispatched to the scene.

During the search, Ms. Carroll was briefly detained in handcuffs until her identification
and connection to the residence was confirmed.  As it turns out, the reporting party was looking
at the wrong residence when he called 911 to report a burglary in progress – in reality he was
looking at Ms. Carroll's residence as she was in the process of transferring groceries from a
motor vehicle to her home.  (Doc. 1-1, ¶¶'s 12-37).

Ms. Carroll has brought unlawful search and seizure claims against Lieutenant Sanches
and former Deputy Archuleta under federal and state law.  She has also brought federal
procedural and substantive due process claims, as well as an equal protection claim against
Lieutenant Sanches and former Deputy Archuleta.  (Doc. 1-1, ¶¶'s 39-51).

In Count III of her Complaint, Ms. Carroll sues former Sheriff Rodella for supervisory
liability pursuant to 42 U.S.C. § 1983.  In Count IV, Ms. Carroll brings a <u>Monell</u> claim against
the County pursuant to 42 U.S.C. § 1983.  (Doc. 1-1, ¶¶'s 53-65).

## II.  <u>RULE 12(C) STANDARD OF REVIEW</u>

A Rule 12(c) motion for judgment on the pleadings is analyzed under the same standards
applicable to a Rule 12(b)(6) motion to dismiss for failure to state a claim.  <u>Corder v. Lewis
Palmer Sch. Dist. No. 38</u>, 566 F.3d 1219, 1223 (10th Cir.), cert. denied, 558 U.S. 1048 (2009).
Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief may be
granted."  Fed. R. Civ. P. 12(b)(6).

Under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claims
showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Although the pleading

standard Rule 8 announces does not require "'detailed factual allegations, it demands more than labels and conclusions.'"  Ashcroft v. Iqbal, 556 U.S. 662, 677-79 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  "[A] formulaic recitation of the elements of a cause of action will not do."  Id.  "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'"  Id., 556 U.S. at 678.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face.  A claim has facial plausibility when [a] plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  A plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  Iqbal, 556 U.S. at 678.  The plaintiff must "nudge [her] claims across the line from conceivable to plausible" in order to be actionable.  Twombly, 550 U.S. at 570.

### III.   PERTINENT ALLEGATIONS FROM PLAINTIFF'S COMPLAINT

#### A.  Supervisory Liability Claim Against Former Sheriff Rodella

Ms. Carroll alleges the following against former Sheriff Rodella in Count III:

53.     *As Chief of RASO, Defendant Rodella was the official policy-maker and final decision maker for the County in the area of law enforcement at all material times.  Rodella had a duty to properly screen, hire, train, monitor, supervise, and/or discipline subordinate employees, agents, and contractors.  Rodella had a further duty to ensure the subordinate officers of RASO were aware of and guided by appropriate policies and procedures so as to respect the constitutional rights of citizens.*

54.     *Rodella breached his duties by failing to properly screen, hire, train, monitor, supervise or discipline subordinate RASO law enforcement officers, including Sanches and Archuleta.  Rodella further breached his duties by failing to adopt or enforce appropriate policies, procedures and*

*protocols and by otherwise failing to take appropriate and reasonable supervisory actions to prevent the harm caused to Plaintiff.*

55.   *Rodella's acts and omissions, as described herein, were the direct and proximate cause of the injuries and damages suffered by Plaintiff as set forth herein.*

56.   *Rodella's acts and omissions as set forth herein, were malicious, reckless, wanton, oppressive, and /or fraudulent, justifying an award of punitive damages against him in his personal capacity for the purpose of punishment and to deter others from the commission of like offenses.*

(Doc. 1-1, ¶¶'s 53-56).

### B.   <u>Monell</u> Claims Against the County.

In Count IV, Ms. Carroll alleges the following against the County:

58.   *The County was the governmental entity that had immediate supervisory responsibility over the actions of the employees of RASO, including the individually named Defendants.  The County had a duty to screen, train and supervise employees and agents of RASO to ensure that they did not act unlawfully.  Supervision includes the obligation to adopt and inculcate reasonable and proper policies and procedures concerning employee training, adequate monitoring and regulation of employee activity, and such other policies and procedures that are reasonably necessary to prevent the harms complained of herein.*

59.   *The County breached its duties by failing to properly screen, train and supervise the individually-named Defendants, thereby causing harm to Plaintiff as set forth herein.*

60.   *The County historically has developed and maintained policies and customs exhibiting deliberate indifference to the constitutional rights of persons in the county, which caused the violation of Plaintiff's rights.*

61.   *At all material times it was the policy or custom of the County to provide its subordinate law enforcement officers with inadequate and improper policies, training, supervision; to inadequately and improperly investigate complaints of its citizens of police misconduct; to tolerate, condone and ratify police misconduct; to inadequately screen employees; and to inadequately discipline and/or terminate employees as needed.*

62.   *The above-described policies and customs of the County demonstrated deliberate indifference to the constitutional rights of persons within the County, permitted or condoned the violation of Plaintiff's rights, and were*

4

the proximate cause of the injuries and damage suffered by Plaintiff as set forth herein.

63.     On information and belief, the County, acting through it subordinate law enforcement officers, had a persistent and wide-spread practice of depriving citizens of their constitutional rights as described above, that it was sufficiently common and well-established to constitute municipal policy.  On information and belief, such a pattern of unconstitutional conduct was shown by the acts and omissions of other subordinate law enforcement officers.  These customs or policies permitted or condoned actions that have occurred for so long and with such frequency that the course of conduct demonstrates the governing body's knowledge and acceptance of disputed conduct.

64.     The County had actual or constructive knowledge of the allegations set forth herein and had a duty to take remedial action to correct deficiencies in RASO policies, procedures and customs.  Despite such knowledge and duties, the County failed to act.

65.     The actions and inactions of the County were a direct and proximate cause of the injuries and damages to Plaintiff as set forth herein.

(Doc. 1-1, ¶¶ 58-65).

## IV.     ARGUMENT

### A.     Ms. Carroll Fails to State a Supervisory Liability Claim Against Former Sheriff Rodella Pursuant to Section 1983.

Under § 1983, supervisory officials such as former Sheriff Rodella are not individually liable for the actions of subordinates on any theory of vicarious liability.  Dodds v. Richardson, 614 F.3d 1185, 1204 (10th Cir. 2010).  "[T]he standard for supervisory liability derives from the language of § 1983 which provides a remedy against anyone who, under color of state law, 'causes' another to be subjected to a violation of his or her constitutional rights.  In contrast, the standard of liability in a case against the actual perpetrator of a constitutional violation derives from the particular constitutional provision at issue, not from § 1983."  City of Canton v. Harris, 489 U.S. 378, 387 (1989).

A supervisory official can be held liable under § 1983 only for his own misconduct at the scene or, beyond his own participation and constitutional deprivation, if during the incident at issue, he implements an unconstitutional policy that is the moving force behind the constitutional deprivation. Iqbal, 556 U.S. at 677. As the Supreme Court in Iqbal made clear, intent to cause the conduct complained of, rather than mere knowledge of it, is required to impose liability on an official charged with violations arising from his supervisory responsibilities. Id., 556 U.S. at 677; Dodds, 614 F.3d at 1204 ("We therefore conclude that after Iqbal, plaintiff can no longer succeed on a § 1983 claim against [a] defendant by showing that as a supervisor he behaved 'knowingly or with deliberate indifference' that a constitutional violation would occur at the hands of his subordinates, unless that is the same state of mind required for the constitutional violation he alleges.").

Ms. Carroll has not satisfied the standards of Iqbal and Twombly in order to proceed on a supervisory liability claim against former Sheriff Rodella in Count III. Ms. Carroll does not allege former Sheriff Rodella was on scene when the alleged unlawful search and seizure occurred and put it in motion. See Doc. 1-1, ¶¶'s 12-37. Ms. Carroll does not allege that former Sheriff Rodella adopted an unconstitutional policy, which is identified with any degree of factual specificity, that was the moving force behind any constitutional deprivation by the officers at the scene. Ms. Carroll also does not allege that former Sheriff Rodella acted with the required state of mind to commit the alleged constitutional deprivation. All Ms. Carroll has alleged in her Complaint is essentially a vicarious liability claim against former Sheriff Rodella, which is not actionable under § 1983. Dodds supra.

When Count III against former Sheriff Rodella is distilled to its essence, all that Ms. Carroll has done is allege labels and conclusions, i.e., a formulaic recitation of the elements of a cause of action against former Sheriff Rodella sans facts. Iqbal, supra. Ms. Carroll has not

crossed the line between possibility and plausibility.  Twombly, supra.  Therefore, Ms. Carroll

has not stated a supervisory liability claim against former Sheriff Rodella pursuant to § 1983, and

former Sheriff Rodella is entitled to judgment on the pleadings as to Count III.

      **b.**      **Ms. Carroll Fails to State a <u>Monell</u> Claim Against the County in Count IV.**

In Monell v. Dept. of Social Services, 436 U.S. 658, 690 (1978), the United States

Supreme Court held that a municipality can be sued under § 1983 where unconstitutional action

"implements or executes a policy statement. . .  or decision officially adopted and promulgated

by [its] officers."  A "municipality may only be held liable under § 1983 for its own

constitutional or illegal polices."  It may not be held liable under a theory of respondeat superior

"solely because its employees inflicted injury on the plaintiff."  See, duBois v. Payne Cty., Bd. of

Cty. Cmmr's., 543 F.Appx. 841, 848 (10th Cir. 2013).

Therefore, in order to state a § 1983 claim against a municipality such as the County, Ms.

Carroll must identify a policy or custom of the County that was a cause of her injury, and "show

the policy was then enacted or maintained with deliberate indifference to almost inevitable

constitutional injury."  duBois, 543 F.Appx. at 849.  Ms. Carroll may satisfy this requirement in

several ways.  "A challenged practice may be deemed an official policy or custom for § 1983

municipal liability purposes if it is a formally promulgated policy, a well settled custom or

practice, a final decision by a municipal policy maker or by deliberately indifferent training or

supervision."  Schneider v. City of Grand Junction Police Dep't., 717 F.3d 760, 770 (10th Cir.

2013) (internal citation omitted).

It is incumbent on Ms. Carroll at the pleadings stage, however, to allege facts and

plausibly demonstrate that such a County policy in fact existed.  Griego v. City of Albuquerque,

100 F.3d 1192, 1213 D.N.M. 2015 (holding that it is inadequate to "simply allege that there is a

policy in place.").  If there is a simple allegation that a policy is in place, that policy as alleged is

treated as a legal conclusion and is not taken at face value for purposes of plausibility analysis. Griego, 100 F.3d at 1213.

Where the policy is a formal written directive, Ms. Carroll may satisfy the pleading requirement by alleging what the County policy is and where it is found in County ordinances. Griego, 100 F.3d at 1213.  Where the County policy is informal, one that is reflected only in "a well settled custom or practice," Ms. Carroll must support such an allegation with additional factual information by stating that an informal policy is demonstrated by prior occurrences of the at-issue constitutional deprivation, evidence from municipal employees that such a policy or custom exists, or by other evidence reflecting _factually_ the custom or practice that is at play. Griego, 100 F.3d at 1215-16 (emphasis added).

In the Monell context, "deliberate indifference" is measured objectively.  duBois, 543 F.Appx. at 849.  Ms. Carroll must show that the [County] had actual or constructive notice that its action or failure was substantially certain to result in a constitutional violation, and conscientiously and deliberately chose to disregard the risk of harm."  Id.  " Although a single incident generally will not give rise to liability, deliberate indifference may be found absent a pattern of unconstitutional behavior if a violation of federal rights is a 'highly predicable' or 'plainly obvious' consequence of a municipality's action."  Id.  But the policy, which must be identified with _factual_ specificity, must be alleged to be "the moving force behind the violation." duBois, 435 F.Appx. at 849 (emphasis added).

As with her supervisory liability claim against former Sheriff Rodella, all Ms. Carroll has alleged against the County in Count IV are labels and conclusions, i.e., a formulaic recitation of the elements of a cause of action against the County sans facts.  Ms. Carroll has not identified a formally promulgated policy of the County, what the County policy is and where it may be found in the County ordinances, nor has she alleged that a written policy was the moving force behind

8

any alleged unconstitutional violation.  Ms. Carroll has also not identified any well-settled

custom or practice with any additional factual allegations involving prior occurrences of the at-

issue constitutional violation, she has not produced evidence from County employees that such a

policy exists, nor has she produced any other factual evidence in terms of allegations in the

Complaint that such a policy exists.  All Ms. Carroll has alleged is her own interaction with

County law enforcement officers on August 25, 2014, concluded that what occurred must be due

to a policy or policies at the County, and then sought to impose liability on the County by

formulaic assertions.  This does not state a proper claim against the County under Monell.

Consequently, the County is entitled to judgment on the pleadings as to Count IV.

## V.        CONCLUSION

For the reasons stated, the County and former Sheriff Rodella are entitled to judgment on

the pleadings as to Counts III and IV.[1]

Respectfully submitted,

YENSON, ALLEN & WOSICK, P.C.

/s/ Robert W. Becker
Robert W. Becker
**Attorneys for Defendants Board of County
Commissioners of Rio Arriba County,
Randy R. Sanches and Thomas R. Rodella**
4908 Alameda Blvd NE
Albuquerque, NM  87113-1736
(505) 266-3995
rbecker@ylawfirm.com

---

[1] Defendants Sanches and Archuleta have moved for qualified immunity on the federal claims against them.  If the Court grants that motion, finding no constitutional violations were committed, the supervisory liability claim against former Sheriff Rodella and the municipal liability claim against the County pursuant to Section 1983 fail.  Martinez v. Beggs, 563 F.3d 1082, 1092 (10th Cir. 2009); Olsen v. Layton Hills Mall, 312 F.3d 1304, 1313 (10th Cir. 2002), citing Hinton v. City of Elwood, 997 F.2d 774, 782 (10th Cir. 1993).

**I HEREBY CERTIFY** that on the 20th day of January, 2017, I filed the foregoing electronically through the CM/ECF filing system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing and mailed same by first class mail to:

Kristina Martinez
A. Nathaniel Chakeres
Coberly & Martinez, LLLP
1322 Paseo de Peralta
Santa Fe, NM, 87501
(505) 989-1029
kristina@coberlymartinez.com
nat@coberlymartinez.com
*Attorneys for Plaintiff*

James P. Sullivan
Brennan & Sullivan, P.A.
128 E de Vargas Street
Santa Fe, NM  87501-2702
(505) 995-9710
jamie@brennsull.com
*Attorney for Brandon Archuleta*

*/s/ Robert W. Becker*